

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION ONE</u>

| | | |
|---|---|---|
| RAYMOND ORDOUKHANIAN, | ) | No. ED111752 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Lincoln County |
| v. | ) | Cause No. 17L6-CC00144 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Thomas J. Frawley |
| | ) | |
| Respondent. | ) | Filed: October 15, 2024 |

## Introduction

Raymond Ordoukhanian ("Movant") appeals from the motion court's denial of his *pro se* Rule 29.15 motion for post-conviction relief.[1]  He argues the motion court clearly erred in denying his *pro se* motion because trial counsel was ineffective for agreeing to a stipulation regarding DNA evidence, failing to object to expert witness testimony for lack of foundation and as speculative, and failing to object to Victim's testimony about uncharged bad acts.[2] We affirm the judgment of the motion court.

## Background

### *Facts*

---

[1] All Rule references are to the Missouri Supreme Court Rules (2017), unless otherwise indicated.
[2] The personal identifying information of Victim and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

In 2014, Movant lived with his wife (Mother) and her two children, Victim and a male minor. In May 2014, Victim and Mother went to an urgent care facility because Victim had a sore throat. In the course of her treatment there, Victim was asked if she was pregnant or sexually active, which caused her to appear nervous. Victim then told Mother and the medical staff that Movant had sexually abused her for "a long time" and that she was abused the previous night. Victim stated Movant had raped Victim multiple times. Later, at trial, Victim also disclosed that Movant forced Victim to perform oral sex on Movant.

Nurse practitioner C.C. performed a SAFE exam on Victim, which came back normal. At trial, before explaining her examination of Victim, C.C. testified that "in ninety to ninety-five percent of the [SAFE] exams I conduct, we don't find any type of permanent injury or scarring." C.C. further explained that "approximately ninety to ninety-five percent of the exams I do are normal. And that's a statistic that is generally held within the medical community, medical literature." Finally, C.C. reiterated that in 90 to 95 percent of cases, a SAFE exam will come back normal, which means the exam did not reveal any trace evidence of sexual abuse.

After Victim disclosed the abuse, police searched Victim's home and seized a comforter from her bed. Laboratory testing revealed the presence of Movant's semen on the comforter. Movant testified at trial that he masturbated with the comforter nearby and that was how his semen was present on the comforter. The State and Movant stipulated that Movant's semen was detected on Victim's comforter and that this was confirmed in a lab report.

The jury found Movant guilty of statutory rape in the first degree, and the trial court sentenced him to life in prison.

*Procedural History*

2

Movant directly appealed his conviction to this Court, and this Court affirmed his conviction in an unpublished order and memorandum. *State v. Ordoukhanian*, 564 S.W.3d 421, 422 (Mo. App. E.D. 2018). On November 14, 2017, Movant prematurely filed his Rule 29.15 motion for post-conviction relief.[3] The motion court then appointed counsel to represent Movant in the post-conviction proceedings. In 2019, counsel filed a Rule 29.15 amended motion after the direct appeal was complete.

In July 2021, Movant filed a motion to dismiss counsel and to proceed on his *pro se* motion for post-conviction relief. The motion court granted Movant's motion and scheduled an evidentiary hearing.

In November 2022, the motion court held an evidentiary hearing on the claims in Movant's *pro se* motion. The *pro se* motion alleged:

> (1) ineffective counsel – counsel did not remove juror which he had a known conflict with; (2) prosecutor did not provide evidence to defense expert, instead violated a court order. Also broke chain of custody by not sending it to crime lab.; (3) ineffective counsel – evidence was hidden from jury in the possession of defense counsel; (4) collusion between P.A., A.P.A., and counsel; and (5) ineffective counsel – never called back [Victim], main witness.

Movant's trial counsel testified at the evidentiary hearing. Regarding Victim's comforter and the stipulation with the State, trial counsel testified, "We wanted to limit the amount of times that we talked about the semen on the comforter as . . . often as we could. So I was limiting the amount of times that was referenced." Trial counsel further explained that he wanted to stay as far as possible from that evidence, and the stipulation was "100 percent" a strategic decision. Trial counsel estimated that the stipulation reduced what would have been about 250 pages of testimony about the presence of semen on the comforter to a single paragraph.

---

[3] A motion filed prematurely is considered filed on the date the mandate of the appellate court issues affirming the judgment or sentence. Rule 29.15(b).

Movant's trial counsel also addressed Victim's testimony that Movant forced Victim to perform oral sex on Movant, which Victim disclosed for the first time at trial. Trial counsel did not object to this testimony because an objection would have drawn more attention to it. Trial counsel explained that "drawing attention to it is a bad thing. You have a jury that's going to pay attention to those things, trying to decide whether or not [Movant] did something. The more I draw attention to an additional thing that she's talking about, the worse it's going to be for [Movant]."

Following the evidentiary hearing, the motion court denied Movant's *pro se* Rule 29.15 motion. The motion court concluded that Movant failed to allege or establish facts which, if true, would entitle Movant to relief. The motion court also found that Movant was not prejudiced.

Movant now appeals.

## Analysis

### Standard of Review

Our review of the denial of a Rule 29.15 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Manley v. State*, 488 S.W.3d 145, 146 (Mo. App. E.D. 2016). The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, we are left with a definite and firm impression that a mistake has been made. *Manley*, 488 S.W.3d at 146-47.

### General Law

To establish ineffective assistance of counsel, a movant must show by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation; and (2) movant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Manley*, 488 S.W.3d at 147. To satisfy the performance prong, a movant "must overcome a strong presumption that counsel's conduct was

4

reasonable" by pointing to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Manley*, 488 S.W.3d at 147. To satisfy the prejudice prong, a movant must show a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. *Id.* If the movant fails to satisfy either the performance prong or the prejudice prong of the *Strickland* test, his claim fails, and we need not address the other prong. *Id.*

"Defense counsel has wide discretion in determining what strategy to use in defending his or her client." *Worthington v. State*, 166 S.W.3d 566, 578 (Mo. banc 2005). "Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017). "Reasonable choices of trial strategy, no matter how ill[-]fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Worthington*, 166 S.W.3d at 573 (quoting *Cole v. State*, 152 S.W.3d 267, 270 (Mo. banc 2004)).

*Point I*

In his first point, Movant argues the motion court clearly erred in denying his *pro se* motion because trial counsel was ineffective for agreeing to the stipulation regarding DNA evidence.

As a preliminary matter, Movant's *pro se* motion did not mention the stipulation or allege any specific facts about counsel's decision to stipulate to the DNA evidence. Movant points to his allegations that the prosecuting attorney and his counsel colluded, and that his counsel hid evidence from the jury.

As Movant acknowledges, a *pro se* litigant is held to the same standards as a licensed attorney. *Bittick v. State*, 105 S.W.3d 498, 504-05 (Mo. App. W.D. 2003). In a post-conviction

relief case, a movant, regardless whether he is acting *pro se* or is represented by counsel, must allege sufficient facts to establish a claim that counsel was ineffective. *Morrow v. State*, 21 S.W.3d 819, 823 (Mo. banc 2000). "Courts will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." *Id.* at 822. The factual pleading requirements are not merely technicalities since the purpose of the factual pleading "is to provide the motion court with allegations sufficient to enable the court to decide whether relief is warranted." *Id.* at 824. "Where the pleadings consist only of bare assertions and conclusions, a motion court cannot meaningfully apply the *Strickland* standard for ineffective assistance of counsel." *Id.* Finally, "pleading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal." *Johnson v. State*, 333 S.W.3d 459, 471 (Mo. banc 2011).

In his *pro se* motion, Movant pleaded "collusion between P.A., A.P.A., and counsel." In support of that allegation, Movant argued that the prosecutor, assistant prosecutor, and trial counsel lied to Movant by claiming the medical examiner was not available to testify.

These allegations are substantially different from Movant's Point I on appeal and do not raise the issue that trial counsel was ineffective for agreeing to the stipulation regarding DNA evidence. Therefore, Movant's Point I is waived. *Shockley v. State*, 579 S.W.3d 881, 899 (Mo. banc 2019) ("In actions under Rule 29.15, any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal.").

If we were to address the point, we would find that the stipulation amounted to reasonable trial strategy. During the evidentiary hearing, Movant's trial counsel testified that his strategy was to limit the evidence regarding Movant's semen on Victim's comforter. Admitting damaging facts to minimize their prejudicial effect is a reasonable trial strategy. *See, e.g., Williams v. State*, 524 S.W.3d 553, 561 (Mo. App. W.D. 2017). Trial counsel's use of a

stipulation in favor of the movant's defense theory also can be considered a matter of reasonable trial strategy. *See State v. Collier*, 892 S.W.2d 686, 693-94 (Mo. App. W.D. 1994).

In addition, Movant suffered no prejudice. Movant was not prejudiced by a stipulation to which he agreed. *Id.* at 693. Also, Movant testified at trial and admitted his semen was on the comforter. "Generally, prejudice does not exist when the objectionable evidence is merely cumulative of other evidence that was admitted without objection and that sufficiently establishes essentially the same facts." *State v. Shade*, 657 S.W.3d 282, 294 (Mo. App. W.D. 2022); s*ee also Lusk v. State*, 655 S.W.3d 230, 238 (Mo. App. E.D. 2022) ("Counsel's failure to object to cumulative evidence, even where the trial court would have sustained the objection, does not result in prejudice."). Movant's admission renders the stipulation that his semen was on the comforter merely cumulative.

Point I is denied.

*Point II*

In his second point, Movant argues the motion court clearly erred in denying his *pro se* motion because trial counsel was ineffective for failing to object to nurse practitioner C.C.'s testimony that 90 to 95 percent of sexual abuse exams are normal. Movant argues the testimony lacked a proper foundation and was speculative.

By contrast, in his *pro se* motion, Movant alleged:

> Medical examiner states "trace evidence led to the victim." Her report has no trace evidence, DNA, nothing. On the contrary all physical, psychological, hymen intact, no trace, all well. Only witness testimony led to victim and that is questionable since original nurse lied. This one statement was very damaging and confusing to jury as none existed on [Victim]. This was perjury from an expert contrary to her own report. Counsel did nothing.

Movant then broadly cited C.C.'s trial testimony.

First, whether Movant's claim refers to the testimony of the medical examiner or of C.C. is unclear. Second, even if Movant's claim may reasonably be interpreted to be that C.C. should have been impeached with her report, that claim is entirely different from Movant's Point II on appeal, which alleges that counsel should have objected to C.C.'s expert testimony as lacking foundation and speculative. Movant did not preserve this issue in his *pro se* motion, and it is waived on appeal. *Shockley*, 579 S.W.3d at 899.

Were we to review this claim, we would conclude that counsel was not ineffective for failing to object to C.C.'s testimony. Contrary to Movant's argument, C.C.'s testimony was not expert testimony and any objection to lack of foundation or speculation would have been meritless. "Counsel will not be deemed ineffective for failing to make nonmeritorious objections." *Hosier v. State*, 593 S.W.3d 75, 92 (Mo. banc 2019).

From her personal experience conducting SAFE exams, C.C. testified that 90 to 95 percent of exams come back normal. "[A] witness who personally observed events may testify to his matter of fact comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life." *State v. Sander*, 682 S.W.3d 85, 96–97 (Mo. App. W.D. 2023) (quoting *State v. Davidson*, 242 S.W.3d 409, 414 (Mo. App. E.D. 2007)). To the extent C.C.'s testimony may be characterized as a lay opinion, a witness may testify to her opinion if she "possesses knowledge that the jury does not and that would help the jury to determine a disputed issue." *Davidson*, 242 S.W.3d at 413.

Point II is denied.

*Point III*

8

In his third point, Movant argues the motion court clearly erred in denying his *pro se* motion because trial counsel was ineffective for failing to object to Victim's testimony about the uncharged bad act of oral sodomy.

Again, Movant failed to raise this issue in his *pro se* motion. Instead, Movant challenged the credibility of Victim for failing to disclose the oral sodomy before trial, and did not raise any issue regarding improper propensity evidence. Thus, Movant's Point III is waived. *Shockley*, 579 S.W.3d at 899.

If we were to consider this claim, we would conclude that counsel was not ineffective for failing to object to Victim's testimony. Opting not to object was reasonable trial strategy, and any objection would have been meritless.

"To prevail on a claim of ineffective assistance of counsel for failure to object to evidence, [Movant] bears the burden of proving, among other things, that the failure to object was not strategic and was prejudicial." *Blade v. State*, 685 S.W.3d 633, 638 (Mo. App. S.D. 2024) (quoting *Tucker v. State*, 633 S.W.3d 539, 542 (Mo. App. S.D. 2021)). "If a failure to object to a statement is based on reasonable trial strategy, then no ineffective assistance of counsel can be shown." *Id.* (quoting *Chaney v. State*, 73 S.W.3d 843, 851 (Mo. App. S.D. 2002)). Deciding not to object can be a reasonable trial strategy because an objection may highlight the issue to the jury and result in more prejudice to the defendant. *See Barton v. State*, 432 S.W.3d 741, 754-55 (Mo. banc 2014).

During the evidentiary hearing, Movant's trial counsel made abundantly clear that he purposefully did not object to Victim's allegation of oral sodomy in order to avoid drawing attention to it. Movant has failed to establish that trial counsel's decision was not reasonable trial strategy. *See Barton*, 432 S.W.3d at 754-55; *Blade*, 685 S.W.3d at 638.

9

Alternatively, an objection to improper propensity evidence would have been meritless. The Missouri constitution allows for the admission, in prosecutions of child sex offenses, of "relevant evidence of prior criminal acts, whether charged or uncharged . . . for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged." *State v. Robertson*, 674 S.W.3d 153, 164 (Mo. App. E.D. 2023); Mo. Const. art. I, § 18(c). A court may exclude this evidence "if the probative value is substantially outweighed by the danger of unfair prejudice." *Robertson*, 674 S.W.3d at 164 (quoting Mo. Const. art. I, § 18(c)).

The State's question that elicited Victim's answer about oral sodomy was at the end of a line of questioning about how Movant had previously raped Victim and was not directly focused on the uncharged act of oral sodomy. As the State points out, the testimony established ongoing crimes involving the same victim in the same timeframe as the charged offense and tended to prove Movant's propensity to commit the charged crime. Thus, the evidence was probative of Movant's propensity to commit acts of sexual abuse against Victim. *See, e.g., State v. Williams*, 548 S.W.3d 275, 289 (Mo. banc 2018) (finding evidence of prior criminal acts probative of charged acts when they are highly similar and close in time). The testimony was brief, was elicited from a single witness, and did not overshadow the evidence of the charged crime. *See, e.g., State v. Shepard*, 662 S.W.3d 761, 771 (Mo. App. E.D. 2023). Thus, the evidence was relevant to prove Movant's criminal propensity and to corroborate the victim's testimony, and was not unduly prejudicial.

Point III is denied.

## Conclusion

We affirm the judgment of the motion court.

_____
Cristian M. Stevens, J.

James M. Dowd, P.J., and
Angela T. Quigless, J., concur.

11